1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALEXANDER LEATHAM,                         No.  2:24-cv-02150 DC SCR P

12                   Plaintiff,

13        v.                                     ORDER

14   SOLANO COUNTY, et al.,

15                   Defendants.

16

17        Plaintiff is in pretrial criminal custody proceeding pro se with a civil rights action under

18   42 U.S.C. § 1983.  Plaintiff requested leave to proceed in forma pauperis (ECF No. 3) but later

19   paid the filing fee in full (see Docket).  Accordingly, plaintiff's motion to proceed in forma

20   pauperis is denied as moot.  The undersigned will proceed to screen plaintiff's complaint (ECF

21   No. 1) under 28 U.S.C. § 1915A.

22                    **STATUTORY SCREENING OF PRISONER COMPLAINTS**

23        The court is required to screen complaints brought by prisoners seeking relief against "a

24   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In

25   performing this screening function, the court must dismiss any claim that "(1) is frivolous,

26   malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief

27   from a defendant who is immune from such relief."  Id. § 1915A(b).  A claim is legally frivolous

28   when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325

1

1    (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless

2    legal theory or factual contentions that are baseless.  Neitzke, 490 U.S. at 327.  The critical

3    inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and

4    factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

5         In order to avoid dismissal for failure to state a claim a complaint must contain more than

6    "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

7    of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,

8    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

9    statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

10   court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

11   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

12   inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When

13   considering whether a complaint states a claim, the court must accept the allegations as true,

14   Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

15   favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**PLAINTIFF'S COMPLAINT**

16

17   **I.    Factual Allegations of the Complaint**

18        Plaintiff is a female transgender pretrial detainee.  (ECF No. 1 at 4.)  The events

19   underlying the complaint occurred at Solano County Jail.  (Id. at 1.)  The complaint names as

20   defendants: (1) Solano County; (2) Wellpath Medical; (3) Officer L. Duffield; (4) E. Woodford,

21   PREA Auditor; (5) Sgt. K. Bettencourt; and (6) Lt. A. Hagen.  (Id. at 2-3.)  The complaint is

22   broadly organized into three separate claims that plaintiff identifies as: (1) Threat to Safety; (2)

23   Retaliation; and (3) Medical Care.  (Id. at 4-10.)

24        **A.  Claim I: Threat to Safety**

25        Plaintiff alleges that in December 2022, defendant Duffield said she deserved her bullet

26   wound injuries for being a woke who thinks he can change from being a man to a woman.  He

27   said this while he had a gun on his body.  (ECF No. 1 at 4.)  Another officer laughed and said

28   plaintiff's colostomy bag wasn't very feminine.  (Id.)

2

1      When plaintiff was brought to Solano County Jail (the "Jail") in December 2022, officials

2 saw her state ID that says "female."  They asked plaintiff her gender.  Plaintiff said "female."

3 They asked what her genitals looked like, and plaintiff said she would not answer.  (Id.)  The

4 officials said that because plaintiff didn't answer, they would house her with men and marked her

5 as "male" in their database.  (Id.)  Then a group of men pressed plaintiff against the floor, cut off

6 her clothes, and looked at her genitals.  They called this a "forcible cross-gender strip search."

7 (Id.)

8      A PREA[1] auditor named E. Woodford came to the Jail.  (ECF No. 1 at 4.)  Plaintiff told

9 Woodford that repeatedly a group of male guards would surround her, pick her up, press her

10 against the floor, cut off her clothes (including her bra and underwear), touch her breasts and stare

11 at her genitals.  (Id. at 5.)  They sometimes made jokes about whether "it" was a "he" or a "she"

12 while plaintiff said that she was a female and does not consent.  (Id.)  Woodford told her that the

13 repeated sexual assaults "would be a violation of PREA if you are a woman.  However, you are

14 not a woman."  (Id.)  Plaintiff relied, "What? I am a woman!  Transgender women are women."

15 Woodford kept repeating, "You are not a woman," and ended the interview.  (Id.)

16      Plaintiff then wrote a grievance informing the Jail of Woodford's transmisogyny.  The Jail

17 said he did nothing wrong in response and on appeal.  (ECF No. 1 at 5.)  Jail officials have done

18 at least nine forcible cross gender strip searches just because plaintiff is transgender.  (Id.)  They

19 have repeatedly claimed what they were doing was according to "policy and procedure," which

20 plaintiff alleges means that Solano's policies and procedures are transmisogynistic and damaging

21 to plaintiff and other transgender people by design.  (Id.)

22      Officials house plaintiff with men who threatened to murder her for being trans, banged

23 on her cell door shouting "show me your tits!", solicited her for sex acts, and called her "faggot,"

24 "tranny," and other derogatory names.  (ECF No. 5-6.)  Guards told her to "ignore it" and wear a

25 second shirt as her breasts were attracting attention.  (Id.)  The guards repeatedly misgender

26 plaintiff.  One instance was documented in sanction report #24000689.  (Id.)

27

28    [1] PREA refers to the Prison Rape Elimination Act of 2003, 34 U.S.C. § 30301 et seq.

3

1    **B.  Claim II: Retaliation**

2        Judge Jeffrey C. Kaufman granted an order of habeas corpus (#WR23-00242, County of

3    Solano, Dept. One) that plaintiff filed saying that housing women who are transgender with men

4    is wrong.  (ECF No. 1 at 7.)  Kaufman wrote, "Respondent is ordered to assign Petitioner to an

5    appropriate facility designated for female inmates."  (Id.)  On the same day that the jail received

6    this order, officials transitioned her to Stanton, an "all-male" facility and pressed her against the

7    ground and tore off her clothes in a forcible strip search as she told them she didn't consent.

8    They then put her in a module designed for only for men.  (Id.)

9        Officials later transferred plaintiff to a medical isolation cell in the Stanton infirmary.

10   (ECF No. 1 at 7.)  Plaintiff is kept in administrative segregation in a cell with no light switch and

11   no outside window for 23 hours a day.  She repeatedly asked what medical reason they had to

12   hold her in the infirmary.  The classification officers evaded her questions.  She has repeatedly

13   asked to leave administrative segregation.  (Id.)

14       In response to grievance #24000949 and #24000933, defendants Bettencourt and Lt.

15   Hagen said they were housing plaintiff in the infirmary because she is transgender and "refuse[s]

16   to be a woman in a general population of men."  (ECF No. 1 at 8.)  In response to grievance

17   #24000949, defendant Bettencourt wrote, "While 2M-Module is part of the infirmary, cells in this

18   module have and can be used for housing people for non-medical reasons."  (Id.)

19       Plaintiff sent letters to trans support groups.  (ECF No. 1 at 8.)  Some of the letters were

20   intercepted and an officer interrogated her about what she said in them.  She does not know if the

21   letters ever made it to their intended recipients.  (Id.)

22   **C.  Claim III: Medical Care**

23       Plaintiff alleges that Wellpath Medical has blocked her access to hormones since her

24   arrival at Solano County Jail in December 2022.  (ECF No. 1 at 9.)  She has filed multiple

25   grievances asking for her hormones or any medical care for being transgender.  The facility and

26   Wellpath did nothing.  (Id.)  In January 2023, the jail received a letter from the Prison Law Office

27   explaining federal and state laws concerning transgender inmates and WPATH standards of care

28

4

1  for transgender inmates.[2]  It said that any prescription for hormones should be continued without

2  delay.  Plaintiff attached the letter to her grievance, #24000934.  (Id.)

3      The Jail acknowledged plaintiff's prescription for hormones in the grievance.  (ECF No. 1

4  at 9.)  Officials claim to be acting in accordance with policy and procedure.  (Id.)  Plaintiff claims

5  Wellpath is intentionally blocking her access to hormones despite repeated requests.  Its staff

6  refuse to acknowledge laws regarding transgender medical care and are instead forcibly

7  hormonally de-transitioning plaintiff for almost two years.  (Id. at 10.)

8      **II.    Request for Relief**

9      Plaintiff alleges myriad injuries, including sexual assaults, threats of use of lethal force

10  against her by guards, harassment, trauma, administrative segregation, gender discrimination, and

11  damage to her body from almost two years of detransition.  (ECF No. 1 at 4, 7, 9.)  As relief, she

12  requests an injunction requiring the facility provide treatment for gender dysphoria and stop

13  housing her with men.  (Id. at 11.)  Plaintiff also request investigations into the facility's use of

14  the infirmary as retaliation, its use of conversion therapy, and the alleged suicides of trans inmates

15  in Solano jails.  (Id.)  Finally, she seeks $1 million in compensatory damages to be donated to a

16  charity for homeless transgender abuse victims.  (Id.)

17                          **LEGAL STANDARDS**

18      **I.    42 U.S.C. § 1983**

19      A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights,

20  privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity,

21  including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim

22  under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law

23  (2) deprived plaintiff of rights secured by the Constitution or federal statutes.  Benavidez v.

24  County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

25      **II.    Linkage**

26      Section 1983 requires that there be an actual connection or link between the actions of the

27

28  [2] The undersigned understands WPATH to be the World Professional Association for
    Transgender Health.

                          5

1  defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.

2  Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71

3  (1976).  Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's

4  "personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a

5  series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which

6  [the defendant] knew or reasonably should have known would cause others to inflict a

7  constitutional injury."  Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks

8  and citation omitted).  In other words, "[a] person 'subjects' another to the deprivation of a

9  constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

10  in another's affirmative acts or omits to perform an act which he is legally required to do that

11  causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

12  Cir. 1978) (citation omitted).

13      **III.   Municipal Liability**

14        Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be

15  liable for causing a constitutional deprivation.  Monell, 436 U.S. at 691, 694; Long v. County of

16  Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  However, municipalities cannot be held

17  vicariously liable under § 1983 for the actions of their employees.  Monell, 436 U.S. at 691.

18  "Instead, it is when execution of a government's policy or custom, whether made by its

19  lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

20  the injury that the government as an entity is responsible under § 1983."  Id. at 694.

21        To properly plead a Monell claim based on an unconstitutional custom, practice, or policy,

22  plaintiff must show that the government "had a deliberate policy, custom, or practice that was the

23  moving force behind the constitutional violation [plaintiff] suffered."  AE ex rel. Hernandez v.

24  County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (quotation marks and citation omitted).

25  Plaintiff must also show that the policy or custom of the government "reflects deliberate

26  indifference" to plaintiff's constitutional rights.  Castro v. County of Los Angeles, 833 F.3d 1060,

27  1073 (9th Cir. 2016) (en banc) (quotation marks and citation omitted).  Unless the challenged

28  policy is in writing, the municipal policy at issue must be the result of a "'longstanding practice

1  or custom which constitutes the standard operating procedure of the local government entity.'"

2  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of San Francisco,

3  308 F.3d 968, 984-85 (9th Cir. 2002) (quotation omitted)).

4  **DISCUSSION**

5  **I.    Causes of Action within Claim I**

6  Plaintiff broadly identifies her first claim as a threat to safety in violation of the Eighth

7  and Fourteenth Amendments.  The undersigned liberally construes the factual allegations in this

8  section as raising three separate causes of action: (1) A Fourteenth Amendment failure-to-protect

9  claim; (2) a Fourth Amendment unreasonable search claim; and (3) a Fourteenth Amendment

10  right to bodily privacy claim.  See Byrd v. Phoenix Police Dep't, 885 F.3d 639, 642 (9th Cir.

11  2018) (noting courts' "obligation where the petitioner is pro se, particularly in civil rights cases,

12  to construe the pleadings liberally and to afford the petitioner the benefit of any doubt").

13  **A. Fourteenth Amendment Failure-to-Protect**

14  The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim

15  against an individual officer are:

16
17  1)  The defendant made an intentional decision with respect to the conditions
     under which the plaintiff was confined;

18  2)  Those conditions put the plaintiff at substantial risk of suffering serious harm;

19  3)  The defendant did not take reasonable available measures to abate that risk,
     even though a reasonable officer in the circumstances would have appreciated
20   the high degree of risk involved—making the consequences of the defendant's
     conduct obvious; and

21  4)  By not taking such measures, the defendant caused the plaintiff's injuries.

22  Castro, 833 F.3d at 1071.  With respect to the third element, the defendant's conduct must be

23  objectively unreasonable, a test that will necessarily "turn on the facts and circumstances of each

24  particular case." Id. (citations omitted).

25  Plaintiff has adequately alleged a failure-to-protect claim against defendant Woodford.

26  Plaintiff alleges that Woodford took no action after she personally complained to him about the

27  staff's forcible strip searches and sexual touching.  Plaintiff alleges that the searches, solicitation

28  for sex acts, and other forms of harassment have continued as a result.  It is reasonable to infer

7

1    objective unreasonableness from Woodford's inaction given his alleged role as the PREA auditor

2    and presumed expertise in handling complaints of this sexual nature.

3         Plaintiff, however, has not alleged a failure-to-protect or other safety-related claims

4    against any other defendants.  Defendant Duffield's alleged verbal abuse does not rise to a

5    constitutional violation.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (generally,

6    "verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42

7    U.S.C. § 1983.") (quotation omitted); but see Valandingham v. Bojorquez, 866 F.2d 1135, 1139

8    (9th Cir. 1989) (verbal harassment intended to endanger an inmate may violate the Constitution).

9    Plaintiff was intimidated by Duffield's gun, but there are no facts to suggest Duffield intended to

10   endanger plaintiff or that carrying a gun was outside the norm for a peace officer.  Accordingly,

11   for screening purposes, plaintiff has stated a Fourteenth Amendment failure-to-protect claim

12   against defendant Woodford.

13                   **B.  Fourth Amendment Unreasonable Search**

14        Because plaintiff is a pretrial detainee, the undersigned construes her allegations regarding

15   forcible strip searches as arising under the Fourth Amendment.  Whether a search is reasonable

16   under the Fourth Amendment requires a case-by-case "balancing of the need for the particular

17   search against the invasion of personal rights that the search entails.  The required factors for

18   courts to consider include: (1) the scope of the particular intrusion, (2) the manner in which it is

19   conducted, (3) the justification for initiating it, and (4) the place in which it is conducted."  Byrd

20   v. Maricopa Cnty. Sheriff's Dep't, 629 F.3d 1135, 1141 (9th Cir. 2011) (en banc) (quoting Bell v.

21   Wolfish, 441 U.S. 520, 559 (1979) (cleaned up)).

22        Cross-gender strip searches involving touching, absent emergency circumstances, are

23   unreasonable under the Fourth Amendment.  Byrd, 629 F.3d at 1146-47.  The undersigned has not

24   identified a Ninth Circuit case addressing the strip search of a transgender female pretrial detainee

25   by male correctional staff.[3]  But given the allegations that the correctional staff conducting the

26   _____

27   [3]  District courts generally analyze searches of transgender female plaintiffs by male guards as
     cross-gender searches.  See, e.g., Duckett v. Garcia, No. 23-CV-4748 BLF (PR), 2025 WL
28   1707291, at *4-5 (N.D. Cal. June 17, 2025); Plunkett v. Parham, No. 2:19-CV-1450 KJM AC P,
     2024 WL 3446520, at *9 (E.D. Cal. July 17, 2024) (collecting cases), report and recommendation

1  searches were aware of plaintiff's gender identity, contacted her breasts, and traumatized plaintiff,

2  as well as the absence of any facts demonstrating an emergency, the complaint adequately alleges

3  unreasonable searches under the Fourth Amendment.

4     Because plaintiff alleges that the cross-gender searches were conducted pursuant to

5  Solano County policy and procedure (ECF No. 1 at 5), her Fourth Amendment unreasonable

6  search claim can proceed as a Monell claim against defendant Solano County.  However, the

7  complaint does not adequately link any individual defendants or other persons to the nine strip

8  searches.  Accordingly, for screening purposes only, plaintiff has alleged a cognizable Fourth

9  Amendment unreasonable search claim against defendant Solano County only.

10          **C.  Fourteenth Amendment Right to Bodily Privacy**

11     "[T]he Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of

12  privacy ... the naked body.'" Vazquez v. Cnty. of Kern, 949 F.3d 1153, 1165 (9th Cir. 2020)

13  (citations omitted).  "[P]risoners retain a limited right to bodily privacy," and pretrial detainees

14  have "at least the same right to bodily privacy as a prisoner."  Byrd v. Maricopa Cnty. Bd. of

15  Supervisors, 845 F.3d 919, 923 (9th Cir. 2017).  The Fourteenth Amendment right to bodily

16  privacy analysis "largely mirrors" the Fourth Amendment unreasonable search test.  Id.

17     As with the Fourth Amendment discussion above, the undersigned finds that plaintiff has

18  adequately alleged a Fourteenth Amendment bodily privacy Monell claim against defendant

19  Solano County only.  Plaintiff states that, pursuant to County policy, staff would press her to the

20  floor, cut off her clothes, and stare at her genitals during the nine cross-gender searches.  Courts

21  have screened in similar claims where the viewing of an inmate's naked body by a guard of the

22  opposite sex was "frequent" and "up close" and "neither obscured nor distant."  See Byrd, 845

23  F.3d at 922 (reversing sua sponte dismissal of complaint and concluding pretrial detainee stated

24  Fourth Amendment claim based on cross-gender policy of allowing female guards to observe

25  male pretrial detainees showering and using the bathroom).  Accordingly, for screening purposes,

26

27  adopted, No. 2:19-CV-1450 DC AC (PC), 2024 WL 4977148 (E.D. Cal. Dec. 4, 2024); Shaw v.
   District of Columbia, 944 F.Supp.2d 43, 55-56 (D.D.C. 2013).  So too do other federal courts of

28  appeal.  See, e.g., Griffith v. El Paso County, Colo., 129 F.4th 790, 827-28 (10th Cir. 2025).

1  plaintiff has stated a Fourteenth Amendment bodily privacy claim against Solano County.

2  **II.     Causes of Action within Claim II**

3       In her second claim, plaintiff alleges that her placement at Stanton, and later the Jail

4  infirmary, constituted retaliation in violation of the Eighth and Fourteenth Amendments. (ECF

5  No. 1 at 7-8.) The undersigned liberally construes this claim as alleging retaliation in violation of

6  the First Amendment and, because plaintiff is a pretrial detainee, a separate Fourteenth

7  Amendment conditions of confinement claim. In addition, within this claim, plaintiff appears to

8  be alleging a First Amendment mail access claim regarding the interception of her letters to trans

9  advocacy groups. (Id. at 7.) Each potential claim is addressed in turn.

10       **A. First Amendment Retaliation**

11       "Within the prison context, a viable claim of First Amendment retaliation entails five

12  basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

13  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

14  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

15  correctional goal." Rhodes v. Robinson, 408 F.3d 559 567-68 (9th Cir. 2005) (citations omitted).

16       The filing of inmate grievances and civil rights lawsuits are protected actions under the

17  First Amendment. See Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) ("The most

18  fundamental of the constitutional protections that prisoners retain are the First Amendment rights

19  to file prison grievances and to pursue civil rights litigation in the courts[.]"). A prison transfer

20  may also constitute an adverse action. See Johnson v. Ryan, 55 F.4th 1167, 1201 (9th Cir. 2022)

21  (plaintiff's transfer from step-down program to maximum security was an adverse action); Pratt

22  v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (finding that a retaliatory prison transfer and

23  double-cell status can constitute a cause of action for retaliation under the First Amendment).

24       Plaintiff has stated a First Amendment retaliation claim against defendants Bettencourt

25  and Hagen based on the transfer to the jail infirmary.[4] The complaint alleges Bettencourt and

26  Hagen made the transfer "in response" to her two grievances. The alleged conditions in the

27

28  _____

[4] The complaint does not identify which defendant was responsible for transferring plaintiff to
Stanton in response to the habeas ruling. (See ECF No. 1 at 7.)

10

1  infirmary, which plaintiff likens to "solitary confinement" (ECF No. 1 at 7), establish the transfer

2  as adverse.  At this stage of the proceeding, Bettencourt's alleged admission that there was no

3  medical reason for the move shows the absence of a legitimate correctional goal for the transfer.

4  Accordingly, for screening purposes, plaintiff has alleged a First Amendment retaliation claim

5  against defendants Bettencourt and Hagen.

6  **B.  Fourteenth Amendment Conditions of Confinement**

7  Plaintiff's complaint challenges the conditions in Stanton's all-male module and its

8  medical isolation cell.  Under the Fourteenth Amendment, a pretrial detainee cannot be subject to

9  conditions that "amount to punishment."  Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004)

10  (quoting Bell v. Wolfish, 441 U.S. 520, 536 (1979)).  Punitive conditions may be shown where:

11  (1) the challenged restrictions are expressly intended to punish, or (2) where the
   challenged restrictions serve an alternative, non-punitive purpose but are
12  nonetheless excessive in relation to the alternative purpose, or are employed to
   achieve objectives that could be accomplished in so many alternative and less
13  harsh methods.

14  Id. (internal citations and quotations omitted).  "Legitimate, non-punitive government interests

15  include ensuring a detainee's presence at trial, maintaining jail security, and effective

16  management of a detention facility."  Id. (citations omitted).

17  The complaint describes plaintiff's conditions at Stanton in detail, particularly in the

18  medical isolation unit.  However, its facts do not adequately link any defendants to plaintiff's

19  placements.  Plaintiff does not identify which defendants personally participated in her transfers

20  to or within Stanton or attribute it to a Solano County policy or procedure.  Therefore, plaintiff

21  has not pled sufficient facts to state a Fourteenth Amendment conditions of confinement claim.

22  **C.  First Amendment Mail Access**

23  Plaintiff also alleges that jail officials intercepted and interrogated her again her letters to

24  trans support group.  Under the First Amendment, prisoners have a right to send and receive mail.

25  Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  However, as with her

26  Fourteenth Amendment conditions of confinement claim, plaintiff has not alleged any

27  defendant's personal participation in the mail interference.  She does not identify who intercepted

28  her mail or interrogated her about its contents.  Accordingly, plaintiff has failed to state a First

1    Amendment mail access claim.

2    **III.    Causes of Action Within Claim III**

3        The undersigned construes plaintiff's third claim as alleging a Fourteenth Amendment

4    inadequate medical care claim against Wellpath and Solano County.  Specifically, plaintiff

5    alleges that defendants refuse to administer hormone treatment prescribed for gender dysphoria.

6        In Gordon v. Cnty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018), the Ninth Circuit

7    extended Castro's four-pronged, "objective deliberate indifference standard" to Fourteenth

8    Amendment medical care claims.  The Ninth Circuit later explained:

9        In the inadequate-medical-care context, the "substantial risk of serious harm"
        prong was met if there was a "serious medical need," such that a "failure to treat a
10       prisoner's condition could result in further significant injury or the unnecessary
        and wanton infliction of pain."  This is an objective standard, and includes the
11       "existence of an injury that a reasonable doctor or patient would find important
        and worthy of comment or treatment; the presence of a medical condition that
12       significantly affects an individual's daily activities; or the existence of chronic
        and substantial pain."
13

14   Russell v. Lumitap, 31 F.4th 729, 739 (9th Cir. 2022) (internal citations omitted).  Under this

15   objective standard, "[a] defendant can be liable even if he did not actually draw the inference that

16   the plaintiff was at a substantial risk of suffering serious harm, so long as a reasonable official in

17   his circumstances would have drawn that inference . . . . a plaintiff must 'prove more than

18   negligence but less than subjective intent—something akin to reckless disregard.'"  Id. at 739 (9th

19   Cir. 2022) (quoting Gordon, 888 F.3d at 1125).

20       The court first addresses whether Wellpath is a proper § 1983 defendant.  Courts presume

21   private companies are not acting under color of state law.  Sutton v. Providence St. Joseph Med.

22   Ctr., 192 F.3d 826, 835 (9th Cir. 1999).  To overcome this presumption, a plaintiff must allege

23   facts showing the private entity "exercised power 'possessed by virtue of state law and made

24   possible only because the wrongdoer is clothed with the authority of state law.'"  Rawson v.

25   Recovery Innovations, Inc., 975 F.3d 742, 748 (9th Cir. 2020) (quoting West v. Atkins, 487 U.S.

26   42, 49 (1988)).  Here, the allegations regarding Wellpath's role in plaintiff's medical care allows

27   for the reasonable inference that it contracts with the County for that purpose.  See, e.g., Ortiz v.

28   Boudreaux, Case No. 1:19-cv-01782-HBK (PC), 2023 WL 2602167, at *3 (E.D. Cal. Mar. 22,

12

1    2023) ("Wellpath and its employees … were under contract with the County to provide medical

2    services to Tulare County inmates. They were therefore performing a public function and acting

3    under color of state law when treating Plaintiff.").  Therefore, plaintiff has adequately alleged that

4    Wellpath was acting under color of state law.

5         Next, for her § 1983 claim to proceed against Wellpath and the County, plaintiff must

6    satisfy the requirements of Monell.  See Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th

7    Cir. 2012) (finding "no basis in the reasoning underlying Monell to distinguish between

8    municipalities and private entities acting under color of state law.").  Here, plaintiff alleges that

9    Wellpath and the County insist to be "acting in accordance with policy and procedure" in denying

10   her hormones.  (ECF No. 1 at 9.)  This is minimally sufficient to state a Monell claim.

11        Turning to the substantive analysis, although plaintiff's medical claim arises under the

12   Fourteenth Amendment, courts may look to Eighth Amendment standards for the minimum

13   standard of care for pretrial detainees.  Gordon, 888 F.3d 1122 (citation omitted).  In Edmo v.

14   Corizon, Inc., 935 F.3d 757, 785 (9th Cir. 2019), the Ninth Circuit recognized that

15   gender dysphoria is a sufficiently serious medical need under the Eighth Amendment.  The Court

16   further held that prison officials violate the Eighth Amendment where the record shows they

17   denied medically necessary treatment for gender dysphoria "with full awareness of the prisoner's

18   suffering[.]"  Id. at 803.

19        With these minimum standards in mind, plaintiff has stated a cognizable Fourteenth

20   Amendment inadequate medical care claim against defendants Wellpath and Solano County.

21   First, in light of Edmo, plaintiff's gender dysphoria is an "serious medical need" for purposes of

22   the Gordon test.  Next, the complaint adequately alleges defendants acted with objective

23   unreasonableness in denying her hormones.  Plaintiff states that she has filed multiple grievances

24   requesting access to hormones and provided officials with legal authorities and WPATH

25   standards that show her hormones "should be continued without delay."  Defendants then

26   declined to administer the hormones, citing policy and procedure.  Plaintiff further asserts she has

27   suffered damage to her body from being without hormones for almost two years.  These facts are

28   sufficient to establish a reasonable prison official would have drawn that inference that plaintiff

1    was at a substantial risk of suffering serious harm.

2        Accordingly, for screening purposes, plaintiff states a cognizable Fourteenth Amendment

3    inadequate medical care claim against defendants Wellpath and Solano County.

4                    **OPTIONS FROM WHICH PLAINTIFF MUST CHOOSE**

5        Based on the court's screening, plaintiff has a choice to make.  After selecting an option

6    from the two options listed below, plaintiff must return the attached Notice of Election form to

7    the court within 21 days from the date of this order.

8        **Option No. 1**

9        The first option available to plaintiff is to proceed immediately on her cognizable claims:

10        (1) Fourteenth Amendment failure-to-protect claim against defendant Woodford;

11        (2) Fourth Amendment unreasonable search claim against defendant Solano
12            County;

13        (3) Fourteenth Amendment right to bodily privacy claim against defendant
            Solano County;

14        (4) First Amendment retaliation claim against defendants Bettencourt and Hagen;
15            and

16        (5) Fourteenth Amendment inadequate medical care claim against defendants
            Wellpath and Solano County.

17    By choosing this Option No. 1, plaintiff will be agreeing to voluntarily dismiss defendant

18    Duffield and her conditions of confinement and mail access claims.  The court will proceed to

19    immediately serve the complaint and order a response from defendants Solano County, Wellpath,

20    Woodford, Bettencourt, and Hagen.

21        **Option No. 2**

22        The second option available to plaintiff is to file an amended complaint to fix the

23    problems described above regarding her conditions of confinement, mail access, and other non-

24    cognizable claims.  If plaintiff chooses this option, the court will set a deadline in a subsequent

25    order to give plaintiff time to file an amended complaint.

26        If plaintiff chooses to file an amended complaint, she must demonstrate how the

27    conditions about which she complains resulted in a deprivation of his constitutional rights.  Rizzo,

28    423 U.S. at 370-71.  Also, the complaint must specifically identify how each named defendant is

                                    14

1  involved.  <u>Arnold v. Int'l Bus. Machs. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be

2  no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

3  defendant's actions and the claimed deprivation.  <u>Id.</u>; <u>Johnson</u>, 588 F.2d at 743.  Furthermore,

4  "[v]ague and conclusory allegations of official participation in civil rights violations are not

5  sufficient."  <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

6        Plaintiff is also informed that the court will not refer to a prior pleading in order to make

7  his amended complaint complete.  <u>See</u> Local Rule 220.  This is because, as a general rule, an

8  amended complaint replaces the prior complaint.  <u>Forsyth v. Humana</u>, 114 F.3d 1467, 1474 (9th

9  Cir. 1997) (quoting <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967)).  Therefore, in an amended

10  complaint, every claim and every defendant must be included.

11                              **CONCLUSION**

12        In accordance with the above, IT IS HEREBY ORDERED that:

13        1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 3) is DENIED as

14  moot.

15        2.  Plaintiff's claims against defendant Duffield do not state claims for relief.

16        3.  Plaintiff has the option to proceed immediately on his five cognizable claims against

17  defendants Solano County, Wellpath, Woodford, Bettencourt, and Hagen as set forth above, or to

18  file an amended complaint.

19        4.  Within 21 days from the date of this order, plaintiff shall complete and return the

20  attached Notice of Election form notifying the court whether she wants to proceed on the

21  screened complaint or whether she wants to file an amended complaint.

22        5.  If plaintiff does not return the form, the court will assume that she is choosing to

23  proceed on the complaint as screened and will recommend dismissal without prejudice of

24  ////

25  ////

26  ////

27  ////

28  ////

                              15

defendant Duffield and plaintiff's Fourteenth Amendment conditions of confinement and First Amendment mail access claims.

DATED: August 26, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

:

1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8                 FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    ALEXANDER LEATHAM,                          No.  2:24-cv-02150 DC SCR P

11                Plaintiff,

12          v.                                    NOTICE OF ELECTION

13    SOLANO COUNTY, et al.,

14                Defendants.

15

16          Check one:

17    _____ Plaintiff wants to proceed immediately on his cognizable claims against defendants

18          Solano County, Wellpath, Woodford, Bettencourt, and Hagen without amending the

19          complaint.  Plaintiff understands that by choosing this option, defendant Duffield and

20          plaintiff's Fourteenth Amendment conditions of confinement and First Amendment mail

21          access claims will be voluntarily dismissed without prejudice pursuant to Federal Rule of

22          Civil Procedure 41(a).

23

24    _____ Plaintiff wants time to file an amended complaint.

25

26    DATED:_____

27                                        _____
                                          Alexander Leatham
28                                        Plaintiff pro se

                                               1